# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.: 1:09-CR-40-TS |
| | ) | |
| DELMAS SEXTON | ) | |

## OPINION AND ORDER

Before the Court is a Motion to Suppress Evidence [DE 18], filed on May 21, 2009. The Defendant, Delmas Sexton, asks the Court to exclude evidence that was recovered from his person and from an acquaintance's residence during a search on July 11, 2008. The Defendant argues that because the police evicted him from the residence contrary to Indiana law and illegally searched his person and the residence without a warrant, a recovered computer system and trash bag contents should be suppressed.[1]

## BACKGROUND

On March 25, 2009, the Defendant was charged in a one-count Indictment [DE 1] with knowingly using a Capital One Visa credit card with the intent to defraud, in violation of 18 U.S.C. § 1029(a)(2). On April 6, the Defendant pleaded not guilty. On May 21, the Defendant filed the instant Motion [DE 18]. The Court held an evidentiary hearing on July 2. On September 11, the Defendant filed a Brief in Support of Motion to Suppress [DE 30]. On October 26, the Government filed its Response to Defendant's Motion to Suppress [DE 36]. On November 16, the Defendant filed his reply brief [DE 45], and the Motion is now ripe for ruling.

---

[1] In his Motion to Suppress and briefs in support, the Defendant seeks to suppress credit cards that were handed from Sexton to a police officer. However, the Government does not intend to introduce this evidence in its case-in-chief, and has given the Defendant written notice of this. Therefore, the Court will consider only the computer system and trash bag contents (including a credit card) in this Opinion and Order.

## FINDINGS OF FACT

Upon consideration of the testimony of the witnesses and the exhibits admitted during the evidentiary hearing, the Court makes the following findings of fact.

At all times relevant, Jonathan Feldman rented a residence (in the form of a converted silo located in a grainery), in Linn Grove, Indiana, located in Adams County, Indiana, from the residence's owner, Todd Fichtler. Feldman had a verbal lease agreement with Fichtler, paying $100.00 per month plus utilities. Feldman was also responsible for maintaining the yard.

Sometime in late May, 2008, one of Feldman's acquaintances brought Delmas Sexton to Feldman's residence to do some laundry because Sexton had recently become homeless. The next day, Sexton returned to the residence and asked if he could move in. Feldman and Sexton worked out an arrangement whereby Sexton could live at the residence if he paid half of the rent and assumed yard maintenance duties. While it was Feldman's understanding that the arrangement was temporary, there was no definite term of lease, nor was there a definite termination date. While living at the residence, Sexton slept in the living room on the sofa, and shared a closet with Feldman. Excepting Feldman's bedroom, Sexton enjoyed full use of the residence.

On July 11, 2008, Feldman contacted the Adams County Sheriff Department because he wanted to have Sexton removed from the residence. At that point, Sexton had been living there for approximately forty days. Feldman met that day with Deputy Sheriff Larry Harv Butler and told Butler that the reason he wanted Sexton removed was that Sexton had been obtaining false names and credit cards. That night, Butler called Feldman and told him that the police could

assist in having Sexton removed that night. At 11:58 p.m., Butler arrived at Feldman's residence with State Trooper Brian Walker, Deputy Sheriff Pat Piper, and Monroe Town Reserve Deputy Alexander Burtch. At least three of the four officers were in uniform, and all were armed. Sexton was in the residence at the time, and Feldman was across the street at a neighbor's house, observing from the front deck.

Upon arrival, Butler knocked on the door and did not receive an answer. Butler peered through an open window and saw Sexton sitting at a computer. He knocked a little harder, and Sexton answered the door. Butler identified himself and explained to Sexton that Feldman did not want Sexton at the residence any longer, and that Sexton "needed to get his things and leave." (Tr. at 40, 72). Sexton was given no choice in the matter, but was told that he had to vacate the premises immediately. Butler described Sexton as being very cooperative and compliant throughout the duration of the encounter. Butler asked Sexton for identification, and Sexton provided Butler with a driver's license and credit card. The credit card was in the name of Colton Goodman. Sexton told Butler that Goodman was a friend of his. Butler tried to contact Goodman but was unable to.

Sexton then began packing his belongings into a duffel bag. As he packed, Walker saw two credit cards in names other than Sexton's fall out of a folder that Sexton was handling. Walker picked up the credit cards and handed them to Butler. Prior to Sexton leaving, Butler asked if he had everything, to which Sexton replied in the affirmative. Butler asked Sexton specifically whether the computer was his, and Sexton responded that the computer belonged to Feldman. Sexton then left on foot.

Shortly after Sexton left the residence, Feldman appeared. Feldman asked if the officers

had found all of the incriminating credit cards, and the officers replied that they had found three. At that point, Feldman indicated that there might be more credit cards in the trash, located in a burn pile behind the residence. Walker accompanied Feldman back to the burn pile, retrieved a large black trash bag, and brought it back inside the residence. Butler was still in the residence when Walker and Feldman returned with the garbage bag. One of the men then began digging through the bag.[2]

The officers found a white CVS bag inside the garbage bag, which contained a Capital One credit card ending in the numbers 4023, some ATM withdrawal receipts from Markle Bank and a welcome letter, all associated with the Capital One credit card. The bag also contained some drug paraphernalia , as well as legal papers, computer packaging, and garbage. Nothing in the garbage bag belonged to Feldman. Before departing the residence, the officers asked Feldman whether he was the owner of the computer. Feldman replied that the computer belonged to Sexton.

## FOURTH AMENDMENT STANDARDS

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, a seizure of personal property is unreasonable unless the seizure is made pursuant to a judicial warrant based upon probable cause or some other recognized exception to the warrant requirement. The Motion to Suppress and subsequent briefing address whether any recognized exception applies to the warrant requirement. This

---

[2] The court notes a discrepancy in the testimony as to precisely how the bag was recovered and searched. Walker claims that Feldman picked up the trash bag and carried it back inside the residence, and that once inside Feldman searched the bag. However, it is Feldman's assertion that Walker carried the bag inside and searched it. The parties do not ascribe any legal significance to the discrepancy.

section will give the law for each exception at issue: consent and abandonment.


## A.  Consent

Consent is a recognized exception to the warrant requirement wherein an individual may voluntarily waive his Fourth Amendment rights. *United States v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008) ("One such exception is voluntary consent given by a person with authority.") (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). "The key to consent is actual or apparent authority over the area to be searched." *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000). For actual authority, a person who has common authority over property can consent to search. *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009). Where a person "allows a third party to exercise actual . . . authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents." *Jame*s, 571 F.3d 707 at 713.  The government bears the burden of proving authority to consent by a preponderance of the evidence. *Id.* at 714 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).

In the absence of proof of actual authority, the Government may claim that it had apparent authority. To prove that a third party has apparent authority to consent to a search, "the government must show that a reasonable person . . . would reasonably believe that the third party had authority over the area to be searched." *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (citing *Rodriguez*, 477 U.S. at 188). Factors to consider in making the determination include "the government's knowledge of the third party's use of, control over, and access to" the area being searched. *Basinski*, 226 F.3d at 834.

**B.      Abandoned Property**

Abandoned property is not entitled to Fourth Amendment protection. *Basinski*, 226 F.3d at 836 (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)). This is because the Fourth Amendment applies only "to places and items for which a person has a reasonable expectation of privacy, and no person can have a reasonable expectation of privacy in an item that he has abandoned." *Id.* (citing *Hester v. United States*, 265 U.S. 57, 58 (1924)). In determining whether property has been abandoned, the Seventh Circuit will "look at the totality of the circumstances, but pay particular attention to explicit denials of ownership and to any physical relinquishment of the property." *Id.* at 837.

The Seventh Circuit recognizes three different kinds of abandonment as exceptions to the Fourth Amendment warrant requirement. The first type is "characterized by the presence of a fleeing defendant who relinquishes the object to make his flight easier or because discarding the item might make it easier for him to later claim that he never possessed it." *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). The second type relates to so-called "garbage cases," wherein a "defendant places material in or near a refuse receptacle that is readily available to the public, and in which he usually places other discarded materials." *Id.* (citing *California v. Greenwood*, 486 U.S. 35, 40–41 (1988)). In the third type of abandonment case, a defendant is "caught red-handed with or near a container of contraband, whereupon he denies that the [property is] his." *Id.* If a set of facts does not fit into any of these three categories, there is a strong suggestion that the property has not been abandoned. *Id.*

**DISCUSSION**

6

With the Government not intending to introduce evidence about the credit cards recovered from the Defendant's person, the Defendant seeks to exclude both the computer system that he had said belonged to Feldman, and the contents of the recovered trash bag. As a threshold matter, the Defendant asserts that all evidence obtained during the search should be suppressed because it was recovered as a result of an illegal eviction, which the Defendant classifies as an illegal seizure. The Court will address that argument, and then turn to the computer system and trash bag contents, respectively.

## A.    Eviction of Sexton

The Defendant relies on *Soldal v. Cook County, Illinois*, to argue that his eviction violated the Fourth Amendment, and that all evidence obtained therefrom must be suppressed. In other words, since the police officers' very presence was occasioned by a Fourth Amendment violation, any evidence that they found while at the residence is *per se* inadmissible. In *Soldal* the Supreme Court examined whether an eviction that failed to follow state eviction statutes was a seizure within the meaning of the Fourth Amendment. The Court held that a seizure "occurs when there is some meaningful interference with an individual's possessory interests in that property." 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Regarding evictions, the Court iterated that "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home." *Soldal*, 506 U.S. at 51 (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)). The Defendant cites dicta in *Soldal* that states "the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to . . . effect an eviction by the police." *Soldal*, 506 U.S. at 59.

After establishing the *Soldal* holding, the Defendant engages in a thorough discussion of the Indiana Code as it relates to landlord-tenant law, and provides the Court with a synopsis of the legal procedures that must be followed in order to eject a tenant and obtain quiet title to property. He outlines numerous failings of Feldman and the police department in following these procedures, including Feldman's failure to file a complaint against Sexton to quiet title, make a showing that Sexton interfered with his right to use the property, and filing an affidavit with the Clerk of the County Court requesting a hearing to quiet title.

Though the Court finds the Defendant's argument cogent and well-briefed, the specifics of this case distinguish it from *Soldal*, and make the *Soldal* holding inapplicable to the instant motion. The residence in *Soldal* was a trailer rented by the Soldal family. A deputy sheriff arrived and seized the entire trailer, dispossessing the family of its home by having it physically removed from its moorings and towed to another lot. What distinguishes the instant case is that the residence in question is not a single-family residence in which all residents were evicted—the case is one where two persons were sharing a residence, only one of whom was asked to leave. Regardless of the deficiencies in the eviction procedure, and the Fourth Amendment injury that may have been suffered by the Defendant, Feldman had and maintained the authority to invite the police onto the property in which he lived and to consent to a search. This is because, to the extent that Sexton had a property interest in the residence, he allowed Feldman, a third party, to exercise actual or apparent authority over the property. *See James*, 571 F.3d at 713. In other words, the eviction of Sexton is not the only legal justification that the police had for being at the residence. Feldman's invitation to come to the residence, and later search it, were justification enough. Therefore, the recovery of the evidence cannot be tied to any

violation of Indiana property law, and the Motion to Suppress cannot be granted on these grounds.[3]

## B.    Computer System

The Defendant contends that the computer system, which he now admits belonged to him and was left at the Feldman residence, was obtained illegally as the police did not have a search warrant, and no applicable exception applies. However, the Government posits that the abandonment exception applies, and it is the Court's finding that the computer falls into the third category of abandonment as defined in *Basinski*. The Defendant was indeed "caught red-handed" with incriminating evidence on his computer, and denied to the police that the computer belonged to him. The Defendant does not dispute that the computer falls into this abandonment category, and seems to admit as much in his brief.[4]

Rather the Defendant asserts a defense of sorts to the abandonment doctrine. First, the Defendant claims that his denial of ownership was merely an "acquiescence to authority." The Seventh Circuit opinion *United States v. Nafzger*, on which both parties rely, stands for the proposition that the voluntariness of a consent to search must arise from "more than mere acquiescence to a claim of lawful authority." 965 F.2d 213, 216 (7th Cir. 1992) (citing *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968)). Accordingly, "[i]f the party conducting the search claimed the authority to search without consent, that factor weighs against a finding of voluntary

---

[3] In rejecting the Defendant's argument for the purposes of this Motion to Suppress, it does not opine on the possible outcome of a lawsuit against Feldman or the police department for wrongful eviction under the Indiana statutes cited by the Defendant.

[4] "Arguably, the computer would be of the third type of abandonment represented in *Basinski*." (Brief in Support of Motion to Suppress at 19).

consent." *Id.* (Citing *Bolden v. SEPTA*, 953 F.2d 807, 824 (3d Cir. 1991). Using this law, the Defendant claims that since he was merely vacating the property in response to the police officers' orders, he could not have abandoned the computer.

This argument fails for two reasons. First, *Nafzger* deals only with consent to search and not the abandonment doctrine. The Defendant does not cite, nor is this Court aware, of any legal precedent that establishes acquiescence to authority as a defense to the abandonment exception. However, even assuming *arguendo* that the acquiescence to authority theory can be used to refute a claim of abandonment, the facts in the case do not support that theory. The authority to which the Defendant was acquiescing was an order to vacate the residence. No police officer told Sexton that he had to leave his computer. In fact, he was told to make sure he had all of his belongings and was asked directly whether the computer was his. To the extent that police used authority in relation to the computer, it was used in a helpful way to make sure that Sexton did not forget anything at the residence. As both the police misconduct and acquiescence to authority defenses fail to counteract the abandonment exception, the Motion to Suppress cannot be granted as to the computer system.

**C.      Trash Bag Contents**

The Defendant similarly asserts that the contents of the trash bag should be suppressed, as the bag was searched without a warrant, and no warrant exception applies. However the Court finds that the contents are admissible under the abandonment exception, and in the alternative, the third party consent exception. The Court will address the exceptions here, respectively.

*1.      Abandonment*

The Court finds that any of the Defendant's property recovered from the garbage bag was abandoned, under the second *Brasinski* category of "garbage trash." That a piece of trash thrown into a garbage bag falls into this category is self-evident, and is not disputed by the Defendant in his Brief in Support of Motion to Suppress.[5] In its reply brief, however, the Defendant attempts to argue that the fact that the credit card was found inside a garbage bag does not make it garbage trash. The crux of the Defendant's argument is that although the bag was found in a "burn pile," it had not yet been burned, and it is thus impossible to know whether the Defendant in fact intended the contents to be burned as garbage. The Court finds this argument unconvincing. The bag was found in a place that the roommates used to store garbage until it was burned. Along with the credit card, the police found old legal papers, packaging, and miscellaneous trash. It is clear from the location of the bag and its contents that its use was for the disposal of waste, and thus the Court finds that all of its contents were abandoned.

As with the computer, the Defendant argues that even if the property were abandoned, it was only done so as acquiescence to authority. The argument fails here as it did earlier. First, there is no law to suggest that this defense applies to the abandonment exception. Second, the police did not direct that the Defendant should leave any of his possessions behind. They allowed him ample time to collect his belongings, and once he was ready they asked if he had everything that belonged to him. To the extent that the police were exercising their authority with respect to the Defendant's property, they were instructing him to take it, not abandon in.

### 2. *Third Party Consent*

---

[5] "Arguably . . . the trash bag is a hybrid of the second and third types [of *Brasinski* abandonment." Brief in Support of Motion to Suppress, 19.

Alternatively, the Court finds that Feldman had both actual and apparent authority to consent to the search of the trash bag. In every sense, Feldman can be said to have had actual "common authority" over the trash bag. The trash had been collected from a residence in which he lived, contained Feldman's, as well as Sexton's trash, and was found on property that he possessed, in an area accessible by him.

Moreover, even in the absence of actual authority, Feldman had apparent authority in the eyes of the police to consent to the bag's search. There is no evidence in the record that the Defendant had exclusive control over the trash bag, or had written his name on the bag or otherwise marked it private. The police had no knowledge that Sexton had ordered Feldman not to touch or open the trash bag (nor does the record suggest that any such request had been made). Due to the nature of the bag, Feldman's possession of the property on which the bag was found, and Feldman's access to the bag (which was found unconcealed, out in the open), a reasonable person would have believed that Feldman had authority over the trash bag.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress [DE 18] is DENIED.

So ORDERED on December 7, 2009.

   s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT